IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEUTSCHE BANK TRUST COMPANY | § | |
| AMERICAS, AS TRUSTEE FOR THE | § | |
| BENEFIT OF THE REGISTERED | § | |
| HOLDERS OF MORGAN STANLEY | § | |
| BANK OF AMERICA MERRILL LYNCH | § | |
| TRUST 2013-C11, COMMERCIAL | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES, SERIES 2013-C11 | § | CIVIL ACTION NO. 4:20-cv-03290 |
| _Plaintiff_ | § | |
| | § | |
| v. | § | |
| | § | |
| BEN MOUSAVI | § | |
| _Defendant_ | § | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSED
VERIFIED MOTION TO STAY SUIT FOR DURATION OF CHAPTER 11
BANKRUPTCY OF NON-PARTY KEIV HOSPITALITY LLC**

COMES NOW, Defendant Ben Mousavi ("Defendant") and files this Reply to Plaintiff's

Response to Defendant's Opposed Verified Motion to Stay Suit for Duration of Chapter 11

Bankruptcy of Non-Party Keiv Hospitality LLC ("Reply"), and in support thereof, would

respectfully show this Court the following:

1.     Plaintiff Deutsche Bank Trust Company Americas, as Trustee for the

Benefit of the Registered Holders of Morgan Stanley Bank of America Merrill Lynch

Trust 2013-C11, Commercial Mortgage Pass-Through Certificates, Series 2013-C11

("Plaintiff" or "Deutsche Bank"), filed the instant suit against Defendant on September

22, 2020, to collect the entire amount that is allegedly due and owing on a commercial

loan made to Keiv Hospitality LLC ("Borrower") in the original principal amount of

$3,750,000.

2.      Defendant, who is a principal and majority owner of Borrower, signed a Guaranty Agreement, guaranteeing the loan pursuant to a "non-recourse" guaranty. Under the loan documents, Defendant potentially is subject to "full recourse" liability for all amounts owed by Borrower if certain events occur.  Plaintiff alleges in its Original Complaint that five of these events have occurred, triggering Defendant's recourse liability under the guaranty.

3.      On September 1, 2020, the Borrower filed a Voluntary Bankruptcy Petition in the United States Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court").  This action is currently pending before the Bankruptcy Court under Case Number 20-34408.

4.      As Defendant is a principal and majority owner of Borrower, Defendant is a primary participant in the reorganization of Borrower.  Defendant has asked this Court to utilize its discretion to stay the instant lawsuit until Borrower's bankruptcy proceeding is concluded so that Defendant may focus his efforts on the reorganization of Borrower. Moreover, the bankruptcy proceeding may moot some of the issues that otherwise would require this Court's time.

5.      In its Response to Defendant's Opposed Verified Motion to Stay Suit for Duration of Chapter 11 Bankruptcy of Non-Party Keiv Hospitality LLC ("Motion"), Plaintiff contends that "the terms of the Guaranty do not support a stay."[1] Defendant does not rely on the Guaranty terms to support his request for stay. Rather, the Defendant requests that the Court exercise its discretion to grant a stay in the interest of justice.

---

[1] Plaintiff's Response to Defendant's Opposed Verified Motion to Stay Suit for Duration of Chapter 11 Bankruptcy of Non-Party Keiv Hospitality LLC ("Response"), Dkt. No. 15, ¶ 4.

6.      Plaintiff also argues that Defendant has "expressly contractually [waived] his right to seek a stay."[2] However, the Guaranty Agreement does not contain an express waiver of Defendant's right to *request* a stay in this Court and no such waiver has been executed. To be clear, Defendant does not seek an automatic stay under the Bankruptcy Code nor does Defendant request the Court discharge his obligations under the Guaranty Agreement.

7.      Rather, the Defendant has requested that the Court utilize its' well-recognized discretion to grant a stay in the interest of justice. As stated by the United States Supreme Court in *Landis*:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance…We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted.…An application for a stay in suits so weighty and unusual will not always fit within the [mold] appropriate to an application for such relief in a suit upon a bill of goods.

*Landis v. North Am. Co.*, 299 U.S. 248, 254-56 (1936). This case presents a perfect example of circumstances that warrant the granting of a discretionary stay by this Court.

8.      The unprecedented, global COVID-19 pandemic has had a devastating impact on the hospitality industry. Borrower owns and operates a hotel in Katy, Texas, which serves as collateral for the loan at issue. Prior to the pandemic and for the entire seven (7) year pendency of the loan, Borrower has been a model borrower. Tellingly,

---

[2] Plaintiff's Response, ¶ 7, p. 4.

Plaintiff's Response does not address or mention the pandemic at all despite the fact that it is difficult to conceive of a more "extraordinary public moment."

9.     Further, a balancing of the factors weighs in favor of a stay, as Defendant will be prejudiced significantly if the stay is not granted whereas the Plaintiff will suffer minimal, if any, harm. In its Response, Plaintiff offers no specific harm that will result to Plaintiff if the Court grants a stay. Conversely, Defendant has detailed various ways in which he will be harmed if the case is not stayed pending the conclusion of the Borrower's bankruptcy case, including but not limited to, the possibility of a personal bankruptcy filing by Defendant which will affect the reorganization plans of Borrower.[3]

10.     Plaintiff argues that Defendant's assertions regarding the value of the collateral are "irrelevant and unsupported."[4] The fact that Plaintiff is oversecured certainly shows that it will not suffer any harm by a stay of this case. Plaintiff has obtained an appraisal of the underlying collateral, and the allegations made in Plaintiff's Original Complaint, along with the respective exhibits, support Defendant's contention that Plaintiff's claim is oversecured. Specifically, Exhibit 6 to Plaintiff's Original Complaint shows the amount of Plaintiff's claim is $2,453,891.27, whereas the value of the collateral securing the claim is $6,300,000.[5]

11.     For no reason other than Plaintiff's loan documents allow for it, Plaintiff has set out to destroy Defendant and demolish the financial and business interests he has built over the years. Defendant immigrated to the United States in 1984 with no money and no resources other than his ingenuity and willingness to work hard. By any measure,

---

[3] See Defendant's Motion, ¶¶ 10-11, pg. 4.
[4] Plaintiff's Response, ¶ 12, p. 5.
[5] Plaintiff's Complaint, Schedule D: Creditors Who Have Claims Secured by Property, p.1, Part 1, § 2.1, Columns A and B.

Defendant personifies the "American Dream." He has acquired a number of hotels and a restaurant. He built a successful business and a legacy to leave his children.

12.     At the time the pandemic struck, Defendant owned four (4) hotels, one of which is collateral for Plaintiff's loan, and one (1) restaurant. Most of Defendant's lenders have willingly worked with Defendant through the pandemic and permitted reasonable terms to alleviate the financial disaster that the pandemic has visited on the hospitality industry as a whole and Defendant in particular. These lenders know that Defendant's properties are solid, enjoy equity, and will rebound when the pandemic subsides. They also know that Defendant will make certain they are paid.

13.     In contrast to these lenders, Plaintiff has embarked upon a different course of action.[6] Plaintiff has used the pandemic to squeeze Defendant and to attempt to force him to liquidate other properties to pay Plaintiff now despite the fact that Plaintiff is oversecured. Plaintiff forced the Borrower to file for Chapter 11 bankruptcy protection and rather than waiting to see if the Borrower's Chapter 11 proceeding will result in full payment, Plaintiff filed suit against Defendant. Yes, the loan documents allow Plaintiff to file suit. But should it have done so? Did Plaintiff need to? Plaintiff wholly fails to address these questions, which go to the heart of Defendant's stay request.

14.     Except for maybe a global war, it is hard to envision a more extraordinary public moment than the pandemic impacting the entire world and visiting a particularly devastating short-term impact on the hospitality industry. Defendant is not asking for an

---

[6] The instant lawsuit is one of two lawsuits filed by CMBS lender(s) against Defendant. Both lenders are represented by the same counsel, utilize the same loan servicer, and the same loan documents underlying the original loan. Further, the Original Complaint(s) filed by the Lender(s)/Plaintiff(s) in the instant lawsuit and companion case are the exact same except for the specific loan details. See *U.S. Bank Nat'l Assoc., et al v. Ben Mousavi*, Civil Action No. 4:20-cv-03289, pending in the United States District Court for the Southern District of Texas, Houston Division.

indefinite stay; he is simply asking for a stay long enough so that the Borrower's bankruptcy case can be brought to fruition. Defendant anticipates that the Borrower's proposed bankruptcy plan will include provisions to ensure that Plaintiff is paid in full and remains fully secured until paid.

15.    Plaintiff will not be harmed by a stay. It is oversecured; it has more than enough collateral value to cover the loan balance. Plaintiff obtained a very recent appraisal that evidences this fact. Plaintiff does not deny it is oversecured. Instead, Plaintiff argues that Defendant's assertion regarding the value of the collateral is unsupported. But that simply is untrue. Defendant knows that Plaintiff obtained an appraisal, and he knows what the property is worth even considering the current pandemic. As the owner of the property, Defendant is competent to provide his opinion of value. And, if he is wrong, Plaintiff surely would have said so. But, it did not.

16.    Defendant submits that the circumstances presented are the precise circumstances that the Supreme Court has recognized warrant a stay in the interest of justice. This Court has the discretion and authority to issue the requested stay. Defendant respectfully submits that if there is ever a case where a stay is appropriate in the interest of justice, this is the case.

## **PRAYER**

Defendant Ben Mousavi submits this request that the Court stay this proceeding until the pending bankruptcy case, Case No. 20-34408, is concluded, and for such other and further relief to which Defendant has shown himself justly entitled.

Respectfully submitted,

 /s/ Walter J. Cicack
Walter J. Cicack
State Bar No. 04250535
S.D. Bar No. 8094
wcicack@hcgllp.com
HAWASH CICACK & GASTON LLP
3401 Allen Parkway, Suite 200
Houston, Texas 77019
(713) 658-9015 - tel/fax
**Attorney-in-Charge for**
**Defendant Ben Mousavi**

OF COUNSEL:
Korri D. Bryant
State Bar No. 24097627
S.D. Bar No. 2980003
kbryant@hcgllp.com
HAWASH CICACK & GASTON LLP
3401 Allen Parkway, Suite 200
Houston, Texas 77019
(713) 658-9015 - tel/fax

## Certificate of Service

I certify that a true and correct copy of the foregoing was served on counsel of record through the Court's CM/ECF system on December 24, 2020, including but not limited to those listed below.

Counsel for Plaintiff:

Christopher L. Chauvin
Via email: chris.chauvin@tklaw.com

Alexander T. Dimock
Via email: alex.dimock@tklaw.com

 /s/ Korri D. Bryant
Korri D. Bryant